Patrick M. Flatley
United States Bankruptcy Judge

Dated: Monday, July 21, 2014 4:00:01 PM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DEBRA S. FAIR, | ) | Case No. 13-387 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| _____ | ) | |
| | ) | |
| DEBRA S. FAIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 13-56 |
| | ) | |
| FIRST CHOICE AMERICA | ) | |
| COMMUNITY FEDERAL CREDIT | ) | |
| UNION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Debra S. Fair (the "Debtor") seeks to "strip off" the consensual lien, in the form of a second-priority deed of trust recorded against her principal residence, held by First Choice America Community Federal Credit Union ("First Choice"). First Choice contends that the Debtor cannot "strip off" its second-priority deed of trust because the Debtor's residence is of sufficient value to secure its claim. At issue here is the appropriate date on which to value the Debtor's residence for purposes of determining First Choice's secured status under 11 U.S.C. § 506(a)(1). The issue is significant because it impacts the Debtor's ability to modify the rights of First Choice, as a junior lienholder, and treat it as an unsecured claimant in her proposed Chapter 13 plan.

For the reasons stated herein, the court finds that the petition date is the appropriate valuation

1

date for the purpose of determining whether a consensual lien is wholly unsecured under § 506(a)(1).

## I. BACKGROUND

On March 27, 2013, the Debtor filed her Chapter 13 voluntary petition in this court. On Schedule A filed with her petition, the Debtor listed her interest in her principal residence located at 935 Wiley Ridge Road, New Cumberland, West Virginia (the "Property"). On April 8, 2013, WesBanco Bank, Inc. ("WesBanco"), filed a proof of claim against the Debtor's bankruptcy estate in the amount of $64,993.31, which is secured by a first-priority deed of trust on the Property. On May 2, 2013, First Choice filed a proof of claim against the Debtor's bankruptcy estate in the amount of $29,129.04, which is secured by a second-priority deed of trust on the Property. On October 16, 2013, the Debtor filed this proceeding to determine the extent of First Choice's secured status under § 506(a)(1) — intending to treat First Choice as wholly unsecured in her proposed Chapter 13 plan. On February 19, 2014, the court conducted an evidentiary trial to determine whether the value of the Property is sufficient to secure First Choice's claim.

At trial, the Debtor and First Choice each presented evidence of the value of the Debtor's residence by the use of qualified real estate appraisers. The Debtor's expert testified that the value of the Property was $60,000 as of November 1, 2012, almost five months prepetition. The Debtor used this valuation in conjunction with valuing the Property at $60,000 on Schedule A filed with her bankruptcy petition. First Choice's expert testified that the value of the Property was $80,000 as of January 22, 2014, less than one month before the trial in this proceeding and almost ten months postpetition. The Debtor testified that any increase in the value of her Property is properly attributable to certain improvements she made thereto postpetition. The court finds both experts' opinions, as well as the Debtor's testimony, to be credible and reliable. Notably, the Debtor's expert conceded that he likely would have valued the Property as of the date of trial, based on his exterior view of the property that morning, at between $80,000 and $90,000. And First Choice's expert conceded that had he valued the Property at some time before the Debtor improved it, his opinion as to its value would have been less than $80,000; although he did not articulate an opinion as to the Property's value in that regard.

## II. DISCUSSION

Here, the parties dispute the appropriate valuation date the court should use in determining

2

whether a junior lien holder is wholly unsecured for purposes of "stripping off" a lien under §§ 506(a)(1) and 1322(b)(2).[1] The Debtor urges the court to set the petition date as the appropriate date for valuing real property in the context of an adversary proceeding to "strip off" a lien as wholly unsecured. First Choice urges the court to follow the "flexible approach" outlined in *In re Cahill*, 503 B.R. 535, 539 (Bankr. D.N.H. 2013) as opposed to the "bright line rules approach for valuations in specific circumstances," and value the Property as of a date closer to the hearing affecting its rights in the property. It asserts such approach is consistent with this court's opinion in *In re Nice*, 355 B.R. 554 (Bankr. N.D.W. Va. 2006), wherein the court, in deciding the appropriate valuation date in the context of a motor vehicle "cram down" in Chapter 13, used the effective date of the confirmed plan. *In re Nice*, 355 B.R. at 562.

"An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . ." 11 U.S.C. § 506(a)(1). "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." *Id*. Based on the discretion left to the court under § 506(a)(1) to determine how and as of what date to value collateral, a split of authority exists regarding the proper valuation date when a Chapter 13 debtor seeks to "strip off" a lien as being wholly unsecured. *See Reconco v. Partners for Payment Relief De III, LLC (In re Reconco)*, Adv. Proc. No. 13-1196, 2014 WL 1295721, at *2 (Bankr. E.D. Va. Mar. 31, 2014) (indicating a split of authority); *In re Gilpin*, 479 B.R. 905, 907 (Bankr. M.D. Fla. 2011) (same).

---

[1] The parties do not dispute that a Chapter 13 debtor generally may employ §§ 506(a)(1) and 1322(b)(2) of the Bankruptcy Code, to "strip off" a wholly unsecured lien and treat the holder thereof as an unsecured claimant in a proposed Chapter 13 plan. *See Weekly v. Bank One Wheeling-Steubenville, N.A. (In re Weekly)*, Adversary No. 07-01, 2008 WL 1791974, at *1 (Bankr. N.D.W. Va. Apr. 17, 2008) (citation omitted) ("While Congress has prohibited Chapter 13 debtors from "cramming down" the secured portion of a mortgage debt on a debtor's principal residence to the value of the collateral, no similar prohibition exists preventing the "strip off" of liens that are wholly in excess of the value of the collateral."); *Dean v. LaPlaya Investments Inc.*, 319 B.R. 474, 476 (Bankr. E.D. Va. 2004) (citation omitted) ("A wholly unsecured lien receives no protection under the antimodification provision of § 1322(b)(2) . . . .").

3

Based upon the arguments and authority presented by the parties, as well as the court's survey of cases related to the issue presented here, the court adopts the petition date is the appropriate valuation date for purposes of "stripping off" a wholly unsecured lien on real property where the debtor wishes to retain the subject property in conjunction with proposing a Chapter 13 plan of repayment.  Notably, the United States Court of Appeals for the Fourth Circuit has suggested in dicta that a second-priority lien is valueless when, as of the petition date, the value of the property upon which the lien is attached is less than the full amount owed on the first-priority lien.  *See Alvarez v. HSBC Bank USA, N.A. (In re Alvarez)*, 733 F.3d 136, 139 (4th Cir. 2013) (noting in dicta that "the value of the property when the petition was filed was less than the full amount owed on the first-priority lien, rendering the second-priority lien valueless").  Additionally, the court is persuaded by those cases noting that the petition date is the "'watershed date of a bankruptcy proceeding.'" *Dean v. LaPlaya Investments Inc.*, 319 B.R. 474, 478 (Bankr. E.D. Va. 2004) (quoting *Johnson v. GMAC (In re Johnson)*, 165 B.R. 524, 528 (S.D.Ga. 1994)).  As of the petition date, "creditors' rights are fixed (as much as possible), the bankruptcy estate is created, and the value of the debtor's exemptions are determined." *Id.*; *In re Gilpin*, 479 B.R. 905, 908 (Bankr. M.D. Fla. 2011).  And the debtor's intent regarding the retention and use of the property is known at or near the petition date; if the debtor does not file a proposed plan with the petition, the plan must be filed within fourteen days thereafter unless the court finds that cause exists for an extension.  *See In re Reconco*, 2014 WL 1295721, at *2 ("Using the petition date is consistent with the fixing of the debtor's and creditor's rights in light of the intended use of the property — retention as the debtor's principal residence — and the amount of the claims necessary to be determined in connection with the strip-off proceeding."); Fed. R. Bankr. 3015.

Moreover, because claims are determined as of the petition date, 11 U.S.C. § 502(b), and it is likely that the value of the collateral will increase or decrease postpetition, "[d]etermining the parties' rights early will discourage them from improperly delaying or accelerating the proceeding (or using other improper tactics) to change their substantive legal rights." *TD Bank, N.A. v. Landry (In re Landry)*, 479 B.R. 1, 7 (D.Mass. 2012); *see In re Reconco*, 2014 WL 1295721, at *1 (noting a junior lienholder's willingness to partially pay off a senior lienholder to cause the amount due to the first lienholder to be less, even if by just $1.00, than the value of the property thus defeating the debtor's proposed "strip off").

To the extent that First Choice urges the court to adopt a flexible approach, similar to that outlined in *In re Cahill*, 503 B.R. 535 (Bankr. D.N.H. 2013), and value the Property at some later date postpetition, which it asserts would be more consistent with the court's holding in *In re Nice*, 355 B.R. 554 (Bankr. N.D.W. Va. 2006), the court is unpersuaded for a several reasons. First, the court in *Cahill*, relying on the final sentence of § 506(a)(1), found it appropriate to determine whether a junior lienholder is wholly unsecured "in conjunction with the plan which affects [the creditor's] rights." *In re Cahill*, 503 B.R. at 540. It found that "valuing all secured claims as of the petition date would render the last sentence of § 506(a)(1) superfluous." *Id.* at 541. This court disagrees. The last sentence of § 506(a)(1) states, in part, that "value shall be determined . . . in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a)(1). This court finds that the better interpretation of § 506(a)(1), at least in Chapter 13, is that the court may determine the value of collateral securing a claim "in conjunction with any hearing" at various stages of a case, but that § 506(a)(1) is silent as to the valuation date to be used by the court in conjunction with such a hearing. *See In re Reconco*, 2014 WL 1295721, at *2 ("While § 506(a) allows valuation hearings at any time during the pendency of a case, it is not determinative because it does not specify the date of the valuation to be used at the valuation hearing.").

The court is also unpersuaded by *Cahill*, particularly as it relates to First Choice's reliance on this court's opinion in *Nice*, because the courts' respective holdings in *Cahill* and *Nice* were based, at least in part, on an analysis of requirements to obtain confirmation of a proposed plan.[2] The court is thus unpersuaded by either of those cases because whether a junior lien is wholly unsecured is a determination to be made independent of, and generally before, the plan confirmation process in Chapter 13. Specifically, at least in this district, a debtor can only "strip off" a wholly unsecured lien only through the commencement of an adversary proceeding, which, according to accepted practice, is most typically resolved before confirmation of a proposed Chapter 13 plan. Because *Nice* presented an issue entirely different than the one presented here, the court declines to

---

[2] The *Cahill* court analyzed the issue, at least in part, as it related to the "best-interest-of-creditors test" in Chapter 11, and this court's analysis in *Nice* was based in large part upon the confirmation requirement found in § 1325(a)(5)(B)(ii).

5

extend its holding to the facts of this case. Moreover, although the court in *Cahill* held that a valuation date near confirmation should be used based upon "the equitable principle . . . that the secured creditor should receive the benefit of an increase in the collateral value," *In re Cahill*, 503 B.R. at 541, it made that determination based upon the increased value being attributable to something other than the debtor's efforts. *Id.* at 542 (distinguishing *In re Wood*, 190 B.R. 788 (Bankr. M.D. Pa. 1996), where the court used the petition date for valuation based upon the post-petition increase in the property's value being caused by the debtor's efforts).

Turning to the evidence here, the Debtor presented credible and reliable evidence that the value of her property securing First Choice's lien was $60,000 as of November 1, 2012, almost five months prepetition. According to First Choice, the value of the same property was $80,000 on January 22, 2014. Because the court finds that the petition is the appropriate valuation date, it looks to the appraisal made closest to the Debtor's petition date of March 27, 2013. Based on the evidence presented at trial — primarily that the property was worth $60,000 on November 1, 2012, and that the property value increased postpetition as a result of the Debtor's post-petition improvement thereof — the court finds that it is more likely than not that the Debtor's real property, to which First Choice's second-priority lien is attached, was worth no more than $60,000 as of the Debtor's petition date of March 27, 2013.

### III. CONCLUSION

Based on the foregoing findings of fact and conclusions of law, the second-priority lien held by First Choice against the Debtor's residence located at 935 Wiley Ridge Road, New Cumberland, WV, is wholly unsecured.

Consistent with Fed. R. Civ. P. 58(a), made applicable to this proceeding by Fed. R. Bankr. P. 7058, the court will enter a separate order granting the Debtor judgment on her complaint.

6